IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SUSAN HUNT, mother and personal representative of DARRIEN HUNT, deceased; CURTIS HUNT; and ESTATE OF DARRIEN HUNT, by its Personal Representative Susan Hunt,<br><br>    Plaintiffs,<br><br>  vs.<br><br>MATTHEW L. SCHAUERHAMER; NICHOLAS E. JUDSON; and the CITY OF SARATOGA SPRINGS, UTAH,<br><br>    Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:15-CV-1-TC |

  The court must answer the question of whether it has and should exercise its supplemental jurisdiction to resolve a dispute raised by a Notice of Attorney's Lien filed in this matter.

  In August 2015, the parties settled this Section 1983 civil rights suit. But in September 2015, Plaintiff Susan Hunt rejected the settlement and fired her counsel Robert Sykes and Sykes McAllister Law Office, PLLC. Mr. Sykes[1] filed a Notice of Attorney's Lien to collect his fees. Soon after that, the Defendants filed a Motion to Enforce Settlement, which the court granted.

---

[1] Ms. Hunt hired Mr. Sykes and his firm, Sykes McAllister Law Office, PLLC. For the sake of simplicity, the court uses the name "Mr. Sykes" to collectively refer to Mr. Sykes and his firm.

Mr. Sykes now seeks to enforce his lien.

Although the court finds that it has supplemental jurisdiction over the attorney's lien issue, the court declines to exercise that jurisdiction. The attorney's lien issue is intertwined with Ms. Hunt's claims of malpractice, violation of the rules of professional conduct, and breach of contract. It is also linked to the threshold dispute between the Plaintiffs about the division of the settlement proceeds. Those claims substantially predominate over the Section 1983 claim that gave this court original jurisdiction.

## **BACKGROUND**[2]

On September 10, 2013, Darrien Hunt was shot and killed by police officers in the City of Saratoga Springs, Utah. Susan Hunt (Darrien's mother) and Curtis Hunt (Darrien's father) filed this Section 1983 civil rights suit against the officers and the City. Ms. Hunt and Mr. Hunt were represented by different attorneys.

Ms. Hunt was represented by Robert Sykes and Sykes McAllister Law Office, PLLC. On September 25, 2014, Ms. Hunt and Mr. Sykes entered into a retainer agreement in which Ms. Hunt agreed to pay a contingency fee of forty percent of any money she recovered from the Defendants.[3]  (See Ex. 3 to Pl. Susan Hunt's Supplemental Br. Opp'n Defs.' Mot. Enforce Settlement (Docket No. 59-3) at p. 67.)

After the complaint was filed, the parties engaged in settlement negotiations. In August

---

[2]The court limits its discussion to facts and procedural events that are necessary to understand the court's ruling. For a more detailed discussion of the case's background, please read the court's orders dated January 6, 2016 (Docket No. 68), February 22, 2016 (Docket No. 75), and February 26, 2016 (Docket No. 82).

[3]This is admittedly a simplified description of the retainer agreement.

2015, Ms. Hunt and Mr. Hunt reached a joint settlement agreement with the Defendants, in which the Defendants agreed to pay $900,000 to the Plaintiffs.

But after the settlement agreement was finalized, Ms. Hunt publicly repudiated the terms of the settlement. She also fired Mr. Sykes and hired new counsel.

At that point, Mr. Sykes filed a Notice of Attorney's Lien in which he claimed a right to forty percent of Ms. Hunt's settlement award. (See Docket No. 16.) Ms. Hunt has contested that lien, although no motion concerning the lien has been filed to date.[4]

The Defendants filed a Motion to Enforce the Settlement Agreement, which the court granted on February 22, 2016. (See Docket No. 75.) That order resolved the merits of the Section 1983 claim, and Defendants have filed a motion to dismiss based on the terms of the settlement agreement. (See Docket No. 86.) That motion will be addressed in a separate order.

Because the dispute over Mr. Sykes' fee arose in this matter, the court ordered the Defendants to deposit the $900,000 in the Court Registry pending resolution of jurisdictional issues raised by the fee dispute.

> Now that the motion to enforce is resolved, the court turns to that Notice and Ms. Hunt's objections. But before the court can address the merits of the dispute, the court must determine whether it has jurisdiction to resolve Mr. Sykes' claim, and, if so, whether this is the proper forum. If the court does take up Mr. Sykes' claim, the process for resolving the claim needs clarification.
>
> To that end, the court orders the City of Saratoga Springs to deposit the $900,000 into the Registry of the court. The court will hold a conference with the parties to decide how to distribute the settlement funds in light of Mr. Sykes'

---

[4]Mr. Sykes filed a notice of lien, not a motion to enforce the lien. But Ms. Hunt treated the notice like a motion and responded on the record. (See Susan Hunt's Opp'n to Mot. for Attorney's Lien (Docket No. 24.) Mr. Sykes responded to defend himself against Ms. Hunt's allegations. (See Docket No. 50.)

> claim of attorney's fees from those funds.  After the conference, the court will issue an order finalizing the terms of distribution. In the meantime, the court directs the parties to brief the issues of jurisdiction, forum, and procedure for the court. . . .

(Feb. 22, 2016 Order & Mem. Decision (Docket No. 75) at 16.)  The Defendants subsequently deposited $900,000 into the court registry.  (See Defs.' Am. Notice of Settlement and Deposit of Settlement Funds (Docket No. 84).)

On March 22, 2016, the court held a hearing to discuss whether the court had jurisdiction over the issues raised by Mr. Sykes' Notice of Attorney's Lien.  The court took the matter under advisement, and now issues its decision.

## ANALYSIS

### Supplemental Jurisdiction Exists

This court has original jurisdiction over this case because the Plaintiffs filed the suit under the federal civil rights statute 42 U.S.C. § 1983.  The question is whether the court has supplemental jurisdiction over Mr. Sykes' Attorney's Lien.  See 28 U.S.C.A. § 1367(a) (West 2016) (court has supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

The court concludes that it does.  In Davis v. King, 560 F. App'x 756 (10th Cir. 2014), the Tenth Circuit held that a federal district court in a Title VII employment discrimination case did not abuse its discretion when it exercised supplemental jurisdiction over an attorney's lien dispute arising out of representation in the Title VII action.  "An attorney need not personally litigate before the court to recover attorney's fees, so long as the claim derives from work done

by the attorney in the lawsuit being litigated." Id. at 759 (citing Garrick v. Weaver, 888 F.2d 687, 690 (10th Cir. 1989)). In Davis, because the "lien had a direct connection to the lawsuit," the district court properly exercised supplemental jurisdiction under 28 U.S.C. § 1367. Id.

Here, the Notice of Attorney's Lien falls within the court's supplemental jurisdiction because it is directly connected to the Hunts' lawsuit against the Defendants. Mr. Sykes filed the complaint, represented Ms. Hunt during the settlement negotiations, and procured the settlement for her. He seeks to collect fees that are calculated based on Ms. Hunt's portion of the $900,000 settlement.

And Mr. Sykes followed the procedure necessary to get the issue before the court. Under Utah's Attorney's Lien statute,

> [a]n attorney shall have a lien for the balance of compensation due from a client on any money or property owned by the client that is the subject of or connected with work performed for the client, including: . . . any settlement . . . in the client's favor . . . whether or not the attorney is employed by the client at the time the settlement . . . is obtained.

Utah Code Ann. § 38-2-7(2)(c) (West 2015). That statute sets forth the procedure for enforcing a lien:

> An attorney may enforce a lien under this section by . . . <u>moving to intervene in a pending legal action in which the attorney has assisted or performed work</u>; or in which the property subject to the attorney's lien may be disposed of or otherwise encumbered; <u>or by filing a separate legal action</u>.

Utah Code Ann. § 32-2-7(4)(a) (West 2015) (emphasis added).

Mr. Sykes chose to intervene in this action. (See Sykes' Feb. 24, 2016 Mot. to Intervene for Limited Purposes (Docket No. 77).) The court denied that motion to intervene without prejudice; the court felt that the request was premature because the court had not yet determined

5

whether it had jurisdiction over the attorney's lien issue. But the court also stated that "[w]hen, and if, the court determines that it will address the attorney's fees issue on the merits, Mr. Sykes is welcome to file a renewed motion to intervene." (Feb. 26, 2016 Order (Docket No. 82) at 2.) Despite the denial, the court recognizes that Mr. Sykes followed the procedures required to maintain his lien claim.

**The Court Declines to Exercise Supplemental Jurisdiction.**

Given the scope of state law issues related to Mr. Sykes' lien, the court questions whether it should exercise supplemental jurisdiction. The court may, in its discretion, decline to exercise supplemental jurisdiction if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . . ." 28 U.S.C.A. § 1367(c)(2) (West 2016). Relying on that statute, and for the reasons set forth below, the court will not adjudicate the attorney's lien issue because it is intertwined with state-law-based issues that substantially predominate over the Section 1983 claim.

First, on the most basic level, the fee Mr. Sykes claims in his lien cannot be calculated until Ms. Hunt's portion of the settlement proceeds has been established. Because the payment was in a lump sum, Ms. Hunt and Mr. Hunt must decide how to divide the $900,000. But they have not yet agreed on their respective shares, and it appears that the division is headed for disagreement. Mr. Sykes, recognizing a potential problem, asserts that Mr. and Mrs. Hunt consented to binding arbitration on the division of settlement proceeds if they cannot mutually agree on a percentage split. But Ms. Hunt disputes even that. The reality is that until the dispute is resolved, Mr. Sykes' fee cannot be calculated. Moreover, that threshold issue (not only the division of the proceeds between Susan and Curtis Hunt but also the very process for reaching

that decision) is not properly before the court. The issue was not contemplated by the settlement agreement, the retainer agreement, or the pleadings. (Ms. Hunt and Mr. Hunt have not asserted cross-claims against each other concerning division of the settlement proceeds.)

Second, the scope of the fee dispute has expanded substantially. In Ms. Hunt's opposition to the lien, she alleges that Mr. Sykes, during the time he represented her under the retainer agreement, breached the contract, committed malpractice, and violated the Utah Rules of Professional Responsibility. All of those claims are based on state law. And in her brief to the court concerning supplemental jurisdiction, Ms. Hunt says that she fired Mr. Sykes "for good cause, on the grounds that he did not fulfill his duties and responsibilities as an attorney consistent with the Utah Supreme Court's Rules of Professional Conduct" when he negotiated the settlement for which he now seeks fees. (S. Hunt's Br. Re: Procedure on Notice of Attorney's Lien at 1 (Docket No. 89).) She announced her intention to file a bar complaint with the Utah Supreme Court's Office of Professional Responsibility against Mr. Sykes or, alternatively, claims for breach of contract and breach of fiduciary duty in "a court of law with jurisdiction to rule on professional legal malpractice claims . . . ." (Id. at 2.)

Mr. Sykes argues that Ms. Hunt's intention to expand the dispute does not affect the court's ability to resolve the attorney's lien. He says that "[e]ven if Ms. Hunt's lawyers were to pursue a claim against Sykes in another forum, it would still not change Sykes' right under the contract for fees based on the $900,000." (Sykes' Mem. Re: Jurisdiction, Forum, and Procedure to Enforce Attorney's Lien at p. 9 n.37 (Docket No. 88).) The court disagrees, because it appears that Ms. Hunt is alleging breach of the very contract under which Mr. Sykes claims his contingency fee. The issues cannot be separated.

A similar jurisdictional issue arose in Ryther v. KARE 11, 976 F. Supp. 853 (D. Minn. 1997). In Ryther, the federal district court declined to exercise supplemental jurisdiction over an attorney's lien dispute because the federal claim creating original jurisdiction (a claim under the Age Discrimination in Employment Act (ADEA)) was no longer pending. Although Ryther was not in the same procedural position as the case here,[5] that court's characterization of the situation before it resonates in this case as well.

> The amount of fees is not at issue here; the parties disagree as to how fees that have already been determined should be split under their contingent fee agreement. The dispute between [the party and his attorney] does not call for this court's expertise, nor call upon the court's knowledge of the subject matter of the underlying suit or the quality or quantity of work performed. Judicial economy militates against jurisdiction in this case, as even if the court were to resolve the attorney lien issue, other state claims outside this court's jurisdiction would still have to be heard by a state court.

976 F. Supp. at 857-58. As the court did in Ryther, this court has decided that the better course is to leave all the issues to the state courts.

This is not a straightforward question of the reasonableness or calculation of fees. True, the existence of the retainer agreement is not in dispute. And it appears that the basic terms of the agreement (in particular, the forty percent contingency fee) are not in dispute. But the fee claim under the retainer agreement is now inextricably linked to claims of malpractice, violation of the professional responsibility rules, and breach of contract that Ms. Hunt alleges in her opposition to the lien. Also, although the issues raised by Ms. Hunt do not necessarily require analysis of a novel or complex question of state law, the topic potentially implicates standards of

---

[5]The ADEA case under which the dispute arose had been dismissed; the fee dispute was raised in a subsequent diversity case that had been removed from state court.

professional responsibility. That is an area of the law regulated by the state, which is uniquely qualified to address the issue. And this court has no familiarity with the facts of the underlying federal claim (the claim did not come before the court until the Defendants asked the court to enforce the settlement agreement) or of Sykes' performance and communications with Ms. Hunt.[6] Accordingly, the factors of judicial efficiency and convenience of the parties do not weigh in favor of exercising supplemental jurisdiction.

The federal question here is essentially resolved. All that is left are matters that turn exclusively on state law and, in the process, wade into waters completely regulated by the state.

The court is mindful of its obligation to decide matters before it, but that obligation does not extend to issues in which state law is so prevalent and that have arisen late in this case. The remaining issues substantially predominate over the Section 1983 claim that gave the court original jurisdiction, and those matters are best handled by State of Utah administrative and judicial forums. Accordingly, the court declines to exercise supplemental jurisdiction over the matter concerning the attorney's lien and the ancillary issues raised in connection with the matter.

**Settlement Funds in the Court Registry Will Not Be Disbursed at this Time.**

Defendants have filed a Motion to Forego Disbursement of Settlement Funds Until Resolution of Prior Counsel's Attorneys' Fee Lien and Completion of Any Appeal. (See Docket No. 85.) In that motion, Defendants request that the court "forego releasing the funds until Ms. Hunt's deadline to file a notice of appeal passes, or any appeal she files is finally resolved, and

---

[6]According to Ms. Hunt, evidence would need to be discovered and presented in order to resolve her claim. But evidence of relevant events would be unrelated to facts at issue in the Section 1983 claim.

her prior counsel's attorneys' fee lien is resolved." (Id. at 2.) Noting that the question of "[h]ow the settlement funds should be divided is currently unclear," (id.), the Defendants cite to Garrick v. Weaver, 888 F.2d 687 (10th Cir. 1989). In Garrick, the Tenth Circuit required that settlement funds deposited in the court registry stay in the court registry in order to preserve the status quo pending appeal of a decision out of which the funds arose.

The court agrees that releasing the $900,000 is not appropriate at this time. The division of the funds between Susan Hunt and Curtis Hunt has not been settled. That issue must be resolved before any fee may be distributed to Mr. Sykes. The court's order requiring Ms. Hunt to accept the settlement will likely be appealed.[7] And Ms. Hunt has clearly indicated that she opposes Mr. Sykes' right to receive the fee he claims in his Notice of Attorney's Lien. She states that she will be filing complaints with the Utah Supreme Court's Office of Professional Responsibility and in state court. For those reasons, the Defendants' motion to forego disbursement is GRANTED.

## ORDER

The court dismisses the attorney's lien dispute without prejudice because the court declines to exercise supplemental jurisdiction over it.

The court GRANTS Defendants' Motion to Forego Disbursement of Settlement Funds Until Resolution of Prior Counsel's Attorneys' Fee Lien and Completion of Any Appeal (Docket

---

[7]The Defendants have filed a Motion for Order of Dismissal with Prejudice (see Docket No. 86), in keeping with the terms of the settlement agreement. The court anticipates that it will grant that motion, albeit in a separate order, because the merits of the case were resolved when the court held that the parties' settlement is a valid, enforceable agreement. But the period for filing an appeal has not been triggered because the court has not yet issued a final appealable order.

No. 85). The $900,000 in settlement funds must stay in the court registry until (a) the time for filing an appeal has passed, or, alternatively, an appeal is resolved; (b) the division of settlement proceeds between Susan and Curtis Hunt is established; and (c) the attorney's lien dispute is resolved.

SO ORDERED this 6th day of April, 2016.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge